# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**THE PUBLIC INTEREST LEGAL**     :
**FOUNDATION,**     :

    :

       **Plaintiff,**     :

    :

     **v.**     :     **NO. 1:18-CV-00463**

    :

**ROBERT TORRES, in his official**     :     **CHIEF JUDGE CONNER**
**Capacity as Acting Secretary of the**     :
**Commonwealth of Pennsylvania, and**     :     **ELECTRONICALLY FILED**
**JONATHAN M. MARKS, in his official**     :
**Capacity as the Commissioner of the**     :
**Bureau of Commissions, Elections and**     :
**Legislation,**     :
       **Defendants.**     :

---

## DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)

---

Daniel T. Brier
Donna A. Walsh
Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503

Counsel for Defendants,
Acting Secretary Robert Torres and
Commissioner Jonathan M. Marks

## **TABLE OF CONTENTS**

INTRODUCTION........................................................................................1

ARGUMENT ...........................................................................................2

    I.    PILF Fails To State a Claim for Relief Under the NVRA ....................2

    II.   Federal and State Law Expressly Prohibit Disclosure of the Records Sought by PILF..................................................................................8

    III.  PILF Lacks Standing To Sue............................................................ 13

    IV.  PILF Failed To Provide Notice Required by the NVRA ................... 15

CONCLUSION ........................................................................................ 16

## TABLE OF AUTHORITIES

*Advancement Project v. Pennsylvania Dep't of Transp.*, 60 A.3d 891
(Pa. Commw. Ct. 2013) ........................................................ 13

*American Civil Rights Union v. Philadelphia City Comm'rs*, 872 F.3d 175
(3d Cir. 2017)........................................................................ 5, 7

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) .......................... 13

*Davis v. Freedom of Information Comm'n*, 47 Conn. Supp. 309, 790 A.2d
1188 (2001) ..................................................................... 9, 10

*Ex Parte Siebold*, 100 U.S. 371 (1879) ................................................. 13

*Fair Hous. Council of Suburban Phila. v. Montgomery Newspapers*, 141 F.3d 71
(3d Cir. 1998) ........................................................................ 15

*Federal Election Comm'n v. Akins*, 524 U.S. 11 (1998) ................................... 14

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ................................... 14

*Judicial Watch, Inc. v. King*, 993 F. Supp. 2d 919 (S.D. Ind. 2012) .................... 15

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................... 14

*National Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479
(1998) ...................................................................................6

*Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331 (4th Cir.
2012)............................................................................ 6, 7, 15

*The Public Interest Legal Foundation, Inc. v. Reed*, No. 1:16-cv-01375
(E.D. Va. Jan. 27, 2017)........................................................... 9, 10

*Russello v. United States*, 464 U.S. 16 (1983) ...........................................5

*Surrick v. Killion*, 449 F.3d 520 (3d Cir. 2006) ........................................ 10

*Threadgill v. Armstrong World Indus., Inc.*, 982 F.2d 1366 (3d Cir. 1991) .......... 10

## **STATUTES**

18 U.S.C. § 2721(a) ........................................................8

18 U.S.C. § 2721(b)(1) ...................................................9

18 U.S.C. § 2721(c) ........................................................9

18 U.S.C. § 2725(3) ........................................................8

52 U.S.C. § 20507 ..........................................................4

52 U.S.C. § 20507(a)(4) ............................................. 5, 6

52 U.S.C. § 20507(b) .....................................................6

52 U.S.C. § 20507(c) ......................................................6

52 U.S.C. § 20507(d) .....................................................6

52 U.S.C. § 20507(i) ............................................... 2, 5, 6

52 U.S.C. § 20507(i)(1) ..................................................2

52 U.S.C. § 20510(b) ......................................................9

52 U.S.C. § 20510(b)(1)............................................... 15

25 Pa. C.S.A. § 1404 ......................................................4

25 Pa. C.S.A. § 1901 ................................................. 2, 5

75 Pa. C.S.A. § 6114(a) .............................................. 13

## **INTRODUCTION**

The National Voter Registration Act ("NVRA") only permits public inspection of records relating to mandatory list maintenance programs that remove the names of voters who have died or moved away.  Plaintiff The Public Interest Legal Foundation, Inc. ("PILF") is seeking something else:  records relating to non-citizens who may have inadvertently registered to vote as a result of a technical "glitch" in the PennDOT Motor Voter system.  While the Commonwealth is actively pursuing a remedy to address this problem, it has never implemented any program or activity to systematically purge suspected non-citizens from the voter rolls.  Even if the NVRA were deemed to apply in these circumstances—and it does not—there are no records to produce because there is no such program or activity.  Unwilling to accept this reality, PILF seeks in the present action to compel the Commonwealth to assemble and produce statutorily-protected driver's license records which, in its opinion, may be used to investigate the citizenship of registered voters.  The NVRA imposes no such obligation and both federal and state law prohibit the Commonwealth from disclosing driver license records.  PILF fails as a matter of law to state any claim for relief and its Complaint should be dismissed.

## **ARGUMENT**

**I.     PILF Fails To State a Claim for Relief Under the NVRA.**

PILF's Opposition Brief, like its Complaint, is based on the fundamentally incorrect premise that the public has a right to access information "affecting the right to vote." (Opp'n Br. at 1.) The NVRA affords no such right.  PILF plainly errs in suggesting otherwise.

PILF argues that the public disclosure provision in 52 U.S.C. § 20507(i) excludes only records relating to declinations to register to vote or to the identity of voter registration agencies and therefore all other records affecting the right to vote must be open to inspection.  (Opp'n Br. at 8.)  This argument ignores the text and purpose of the NVRA and cannot withstand scrutiny.  Contrary to PILF's assertion, the NVRA allows access only to "records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."  52 U.S.C. § 20507(i)(1).  PILF ignores the express statutory prerequisite that, to be accessible, records must relate to "the implementation" of list maintenance.  PILF also fails to recognize that list maintenance in Pennsylvania is codified in 25 Pa. C.S.A. § 1901 which notably does not include any program or activity for systematic removal of non-citizens.

Not surprisingly, PILF alleges no facts which plausibly suggest that the

Commonwealth implemented any program or activity for the purpose of removing

non-citizens.[1] Even the purported "matching analysis" that PILF is seeking is, by

PILF's own admission, preliminary and review of that data by state officials is

ongoing. *See, e.g.*, Compl. ¶ 57 ("Defendant Torres explained that the Department

of State is continuing to investigate noncitizens presently registered to vote" and

that investigation "includes expert analysis"); *see also* Tr. of State Government

Committee Public Hearing, Oct. 25, 2017, at 15 (Commissioner Marks testified:

"In terms of doing a match or doing a comparison between the two databases,

we're reviewing that right now with our legal counsel to determine what options

are available to us to do a fair match, to do an accurate match or an accurate

comparison between the two databases."); *id.* at 17 ("We are in the process of

doing that right now.  As I said in my testimony, we are reviewing that with our

legal counsel to determine what options are available to us."); *see also* Written

Testimony of Acting Secretary Torres at Public Hearing on Motor Voter, Unlawful

Voting & Cybersecurity, Dec. 12, 2017, at 2 ("The Department's ongoing effort

includes expert analysis of the State Uniform Registry of Electors (SURE)

---

[1] PILF misstates the allegations in its Complaint in asserting that Acting Secretary Torres "conceded" that the Department of State "is conducting list maintenance regarding noncitizens presently registered to vote."  (Opp'n Br. at 11.)  As is clear from the actual testimony referenced in the Complaint, there was no such concession.

database and PennDOT's driver license database. This analysis must be done deliberately, and it must demonstrate a critical level of accuracy and sound methodology that results in high-confidence matches, to avoid the risk of disenfranchising eligible voters.").[2]

At most, PILF's Complaint alleges that the Department of State is engaged in ongoing review of a problem that has *not* resulted in implementation of a program or activity to cancel voter registrations of possible non-citizens. Indeed, even if the NVRA applied to activities aimed at removing non-citizens—and it does not, as set forth below—there is no such program in Pennsylvania and therefore nothing to make available for inspection.[3]

Contrary to PILF's assertion, the NVRA does not obligate states to implement programs to investigate and remove suspected non-citizens or to make investigatory materials available for public inspection. In fact, the section in which the public inspection provision appears, 52 U.S.C. § 20507, does not reference review of citizenship or removal for non-citizenship. Rather, as the Third Circuit

---

[2] The October 25, 2017 transcript and December 12, 2017 written testimony are referenced in the Complaint and links to the transcript and testimony are provided in the Complaint, (Compl. ¶¶ 47-48, 55, 57), and therefore these materials are properly considered in connection with this Motion.

[3] Moreover, Pennsylvania law limits voter-related information that may be publicly disclosed and does not allow disclosure of voter registration numbers or other information sought by PILF. *See* 25 Pa. C.S.A. § 1404.

held in the *ACRU* case, this section only requires states to implement regular

programs to remove the names of voters who have died or moved away. *See*

*American Civil Rights Union v. Philadelphia City Comm'rs*, 872 F.3d 175, 182 (3d

Cir. 2017) ("*ACRU*"). Notwithstanding this statutory mandate, PILF argues that

public access should not be limited to list maintenance relating to death or change

of residence because those terms do not specifically appear in 52 U.S.C. §

20507(i). (Opp'n Br. at 9.) The text and structure of the NVRA, however, make

clear that *only* records relating to these mandatory removal programs are required

to be made available for public inspection. The reference in § 20507(i) to

"programs and activities" can only be read as relating to the mandatory obligation

in § 20507(a)(4) to "conduct a general program . . . to remove the names of

ineligible voters . . . by reason of . . . death . . . or a change in . . . residence . . . ."

In Pennsylvania, the list maintenance programs mandated by the NVRA are

outlined in 25 Pa. C.S.A. § 1901 and do *not* provide for systematic removal of

persons suspected of being non-citizens.[4]

---

[4] PILF bases its statutory construction argument on *Russello v. United States*, 464 U.S. 16 (1983), but that case is not on point. The issue in *Russello* was whether the word "interest" in the RICO forfeiture provision can be read as applying only to "interests in an enterprise" when the reference to "enterprise" appears in another section of statute but does not appear in the separate forfeiture section. By contrast, the public disclosure provision in the NVRA appears in the *same section* of the statute that requires states to implement programs to remove the names of persons who have died or changed residence and uses the *same*

Unable to point to any support for its position in the text of the NVRA, PILF asserts that *Project Vote* involved "a similar challenge" and supports a right of inspection here. (Opp'n Br. at 8.) *Project Vote*, however, is materially different. That case involved a request to inspect rejected voter registration applications. The Fourth Circuit concluded that the request was within the scope of the public disclosure provision because *Virginia law* tasked Virginia election employees with responsibility for reviewing the applications and assessing the applicants' qualifications. *Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331, 335-36 (4th Cir. 2012). In direct contrast to *Project Vote*, Pennsylvania law does not task any election officials with specifically reviewing and assessing citizenship of registered voters.[5] Further, PILF is not seeking to access voter registration applications or any records required by statute to be reviewed by state election officials in performing list maintenance, but is instead seeking to compel

---

*general language*. Similar language appearing in the same section of a statute is required to be read the same way. *See National Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 501 (1998). Thus, the right of public inspection of "programs" in § 20507(i) necessarily applies to "programs" to purge voters who have died or moved away which are required by § 20507(a)(4) and further described in § 20507(b), (c) and (d).

[5] Of course, the Commonwealth is mindful of ensuring that only qualified individuals cast ballots. As the Complaint recognizes, the Department of State is conducting an investigation to address such concerns. *See, e.g.*, Compl. ¶ 57. Such investigation, however, is not a "program or activity" under the NVRA and is not specifically required by Pennsylvania law.

disclosure of preliminary results of a special investigation into a computer error. Even if the Fourth Circuit's interpretation of the NVRA in *Project Vote* were applied rather than the different interpretation adopted by the Third Circuit in *ACRU*, PILF nonetheless fails to state a claim because the records it is seeking are not in any way analogous to the rejected voter applications at issue in *Project Vote*.

Finding no support in the statutory text or the caselaw, PILF argues that disclosure is necessary to foster transparency and accountability in this "area of constitutional importance." (Opp'n Br. at 11-12.) It is agreed that maintaining the integrity and security of our election systems is of paramount concern and Defendants are committed to remedying the Motor Voter problem in a way that does not disenfranchise eligible voters or deter eligible persons from exercising their right to vote. But that is not the issue presented in the Complaint and Motion To Dismiss. Rather, the issue is whether the NVRA requires the Commonwealth to make records available for public inspection merely because they may shed light on whether persons are eligible to vote. The answer is clearly no. The records sought by PILF are not used in Pennsylvania's standard list maintenance programs and are not required to made available under the NVRA. PILF thus fails to state a claim for relief and its Complaint should be dismissed.

## II.   Federal and State Law Expressly Prohibit Disclosure of the Records Sought by PILF.

PILF's effort to compel disclosure of driver license records fails for the alternative reason that disclosure of such records is prohibited by both federal and state law.  PILF's arguments to the contrary are without merit.[6]

PILF is wrong in positing that citizenship-related data appearing in a driver record is not protected by the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721(a).  (Opp'n Br. at 16-17.)  The DPPA prohibits disclosure of "personal information" which is defined as "information that identifies an individual," including "driver identification number[s]."  18 U.S.C. § 2725(3).  The identification numbers that PILF is seeking from driver license records—described in the Complaint as "the data matching of PennDOT driver's license numbers with INS Indicators against driver's license numbers of registered voters in the statewide voter registration database," (Compl. ¶ 66)—undeniably serve to identify individuals and therefore the DPPA precludes disclosure of that information.

PILF also errs in contending that the DPPA only binds PennDOT and does not prohibit state election officials from disclosing driver license records.  (Opp'n Br. at 15.)  The DPPA expressly prohibits other government agencies from re-

---

[6]  PILF attacks a straw man in accusing Defendants of taking the position that any record with a nexus to a state motor vehicle agency is protected from disclosure.  (Opp'n Br. at 15.)  This is not Defendants' position.

disclosing driver license records for non-permitted uses.  *See* 18 U.S.C. § 2721(c).

Equally without merit is PILF's argument that it has a right to access driver license

records under 18 U.S.C. § 2721(b)(1) which permits use by "any private person or

entity acting on behalf of a Federal, State, or local agency in carrying out its

functions."  PILF does not qualify for access under this subsection because it is not

acting on behalf of any government agency and is not carrying out any government

function.  Nor can PILF claim a right of access as a "private attorney general."

(Opp'n Br. at 16.)  While private citizen suits to enforce the NVRA are permitted

in certain circumstances, 52 U.S.C. § 20510(b), nothing in the NVRA or DPPA

authorizes private citizens to access confidential driver's license records for the

purpose of investigating whether non-citizens are registered to vote.  PILF's

attempt to bootstrap the citizen suit provision into a right to access confidential

driver records thus fails.

Blocked by the DPPA, PILF tries to analogize this case to *Reed* and *Davis*

where non-driver license records were deemed not to implicate the DPAA.  In

*Reed*, the United States District Court for the Eastern District of Virginia

determined that the DPPA did not apply to a request for records relating to voter

registrations that were canceled due to non-citizenship.  *The Public Interest Legal

Foundation, Inc. v. Reed*, No. 1:16-cv-01375 (E.D. Va., filed Jan. 27, 2017).

While it is not possible to discern the precise issue or the Court's reasoning from

the terse, two-paragraph order attached to PILF's Opposition Brief, the court

filings in *Reed* confirm that the only records required to be made available were

voter cancellation notices.[7] The Order in *Reed* did not reference or compel

production of driver's license records like those sought by PILF in this case.

Similarly, in *Davis*, the Superior Court of Connecticut concluded that it was not a

violation of the DPPA to publish lists of names and addresses of owners of motor

vehicles and snowmobiles which were required to be maintained by municipal tax

inspectors and to be made available to the public. *Davis v. Freedom of Info.*

*Comm'n*, 47 Conn. Supp. 309, 790 A.2d 1188 (2001). *Davis* did not involve a

request to access driver license records. Neither *Reed* nor *Davis* is remotely on

point or binding on this Court. *See Surrick v. Killion*, 449 F.3d 520, 535 (3d Cir.

2006) (state court decisions do not bind federal courts with respect to federal law);

*Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991)

---

[7] In the Complaint filed in the *Reed* case (obtained from PACER), PILF
sought access to "records showing individuals whose voter registrations have been
cancelled because they were determined to not be United States citizens." Compl.
¶ 9, *The Public Interest Legal Foundation, Inc. v. Reed*, No. 1:16-cv-01375 (E.D.
Va., filed Oct. 31, 2016) (ECF No. 1). In its brief in opposition to the defendant's
motion to dismiss in *Reed*, PILF reiterated that it was seeking access to "notices
mailed by a local election official to potential non-citizens on the registration rolls,
the dispositions of those election inquiries by an election official, and records of
cancellation of election registrations pursuant to those inquiries." Br. in Opp'n to
Mot. To Dismiss at 8, *The Public Interest Legal Foundation, Inc. v. Reed*, No.
1:16-cv-01375 (E.D. Va., filed Dec. 6, 2016) (ECF No. 12). *Reed* did not involve
a request for driver license records and therefore *Reed* provides no support for
PILF's position in this case.

("The doctrine of *stare decisis* does not compel one district court judge to follow the decision of another.").

No doubt recognizing the insurmountable obstacle posed by the DPPA, PILF argues in the alternative that it is not seeking driver's license records but rather voter registration records.  (Opp'n Br. at 12-13.)  This position is new.  In both its letters and Complaint, PILF requests access to driver's license records which include driver's license numbers and entries identifying persons as potential noncitizens ("INS indicators") and explains its intent to compare that information to voter registration lists for the purpose of identifying persons who may be noncitizens and thus ineligible to vote.  *See, e.g.*, Oct. 23, 2017 Letter at 1 (attached to Compl. as Ex. H) (requesting "information obtained from . . . the Pennsylvania Department of Transportation since January 1, 2006 . . ."); Nov. 4, 2017 Letter at 1 (attached to Compl. as Ex. I) (requesting "results (full or interim) from an aforementioned official 'review' of voter data compared against PennDOT's database of customers to identify voters with matching driver profiles . . ."); Compl. ¶ 94 ("The requested records, including records related to the Noncitizen Matching Analysis, . . . must be made available under the NVRA . . .

11

"). PILF's new claim that is not seeking to access driver's license records is not credible.[8]

In a last ditch effort to avoid dismissal, PILF argues that the DPPA could not have been intended to limit public disclosure of driver's license records for the purpose of verifying voter eligibility because the NVRA was enacted after the DPPA. (Opp'n Br. at 17-18.) This argument mixes apples and oranges. The NVRA permits public inspection of a discrete category of records relating to regular programs to remove the names of persons who have died or moved away and the DPPA protects driver's license records from disclosure for other than specifically authorized uses. The driver's license records that PILF is seeking do not fall within the scope of the NVRA and are plainly protected from disclosure by the DPPA. There is no inconsistency in the statutes. Likewise, contrary to PILF's argument, there is no conflict between the DPPA or NVRA and Pennsylvania state law which similarly prohibits disclosure of information relating to driving records.

---

[8] To the extent PILF is suggesting in its brief that it is only seeking access to cancellation records and communications with registrants and third parties concerning cancellation of non-citizen registrations, (Opp'n Br. at 13), it has no claim. As Commissioner Marks advised in response to PILF's request for records (attached to Defs.' Br. in Supp. of Mot. To Dismiss as Ex. A), the Commonwealth does not have a systematic removal program regarding non-citizens and therefore there are no documents responsive to PILF's request for such records. Accordingly, if PILF is seeking only cancellation records, it should withdraw its Complaint.

75 Pa. C.S.A. § 6114(a); *see also Advancement Project v. Pennsylvania Dep't of Transp.*, 60 A.3d 891, 895 (Pa. Commw. Ct. 2013).  PILF's effort to imagine a conflict is without merit.[9]

PILF is barred by both federal and state law from accessing driver license records and therefore fails to state a claim upon which relief can be granted.[10]

### III.   PILF Lacks Standing To Sue.

Unable to point to any statutory right of access to the requested information or any actual injury, PILF contends that the mere denial of its request for records confers standing under Article III.  This is not correct.

---

[9]   Again, the cases cited by PILF are not on point.  In *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013), the issue was whether a state law requiring voters to present documentary evidence of citizenship was preempted by the Elections Clause in the United States Constitution and the NVRA which required use of a particular voter registration form without separate proof of citizenship.  There is no conflict between the NVRA which does not address driver license records and Pennsylvania state law which prohibits disclosure of such records.  The issue in *Ex Parte Siebold*, 100 U.S. 371 (1879), was whether state officials could be prosecuted in federal court for violating federal laws that incorporate state election regulations.  No such dual prosecution is presented here.

[10]   Parenthetically, it is important to clarify that a person's current citizenship status is not maintained in a driver license record.  While some records may include references to citizenship status at the time drivers present at PennDOT, there is no obligation to update this reference as citizenship status changes.

To show standing, it is not enough for an organization to assert that it requested and was denied access to agency records. Rather, a litigant must demonstrate that it has a statutory right to the information sought and that denial of access to the information caused concrete and particularized harm. *See Federal Election Comm'n v. Akins*, 524 U.S. 11, 21-24 (1998); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). PILF makes no such showing.

First, there is no statutory obligation to make the requested information available for public inspection. As detailed above and in Defendants' opening brief, neither the NVRA nor state law require Pennsylvania to implement a program to systematically remove non-citizens from the voting rolls. And even if the NVRA were deemed to apply to programs aimed at removing non-citizens, the Commonwealth does not have any such program. PILF thus fails to identify any information in the Commonwealth's possession to which it has a legal right of access.

Second, PILF fails to demonstrate any injury in fact. It seeks information concerning registrants' citizenship status for the purpose of "assess[ing], monitor[ing], and attempt[ing] to remedy [the] Secretary's list maintenance activities." (Opp'n Br. at 21.) Such a hypothetical, abstract interest in making sure that the law is followed does not confer standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573 (1992). PILF argues in the alternative that it "incurred

14

significant costs in attempting to access the requested records, including two visits

to the Secretary's office." (Opp'n Br. at 20-21.) This argument is also a non-

starter. Litigation-related expenses, including costs incurred in investigating an

alleged violation, do not qualify as an injury in fact. *See Fair Hous. Council of

Suburban Phila. v. Montgomery Newspapers*, 141 F.3d 71, 78-79 (3d Cir. 1998).

Put simply, PILF fails to point to any statute requiring disclosure of any

"matching analysis" and denial of access to such information caused no injury to

PILF. PILF therefore lacks standing.[11]

## IV.   **PILF Failed To Provide Notice Required by the NVRA.**

PILF does not dispute that it failed to direct notice of any alleged violation

to Acting Secretary Torres as required by 52 U.S.C. § 20510(b)(1). For this

reason, the Complaint should be dismissed.

---

[11]   The cases cited by PILF do not address the issues presented here and
therefore do not apply. For example, in *Judicial Watch, Inc. v. King*, 993 F. Supp.
2d 919 (S.D. Ind. 2012), the plaintiff asserted associational standing on behalf of
its members who were registered voters and there was no challenge to standing
with respect to the records claim. PILF has not invoked and cannot invoke
associational standing in this case. In *Project Vote/Voting for America, Inc. v.
Long*, 752 F. Supp. 2d 697 (E.D. Va. 2010), the plaintiff was a non-profit
organization questioning the rejection of voter registration applications submitted
by students at a historically African-American university. PILF has no such
concrete and particularized interest in the records that it is seeking.

# CONCLUSION

For the reasons set forth above and in Defendants' opening brief, PILF fails as a matter of law to state any claim upon which relief can be granted and lacks standing to sue.  The Complaint should therefore be dismissed.

Respectfully submitted,

/s/ Daniel T. Brier
Daniel T. Brier
Donna A. Walsh

Counsel for Defendants,
Acting Secretary Robert Torres and
Commissioner Jonathan M. Marks

Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
(570) 342-6100

Dated:   May 2, 2018

16

## CERTIFICATE OF SERVICE

I, Daniel T. Brier, hereby certify that a true and correct copy of the foregoing

Reply Memorandum in Further Support of Motion To Dismiss was served upon

the following counsel of record via the Court's ECF system on this 2nd day of

May, 2018:

> J. Christian Adams, Esquire
> Noah H. Johnson, Esquire
> Public Interest Legal Foundation
> 32E Washington Street
> Suite 1675
> Indianapolis, IN  46204
>
> Linda A. Kerns, Esquire
> Law Offices of Linda A. Kerns, LLC
> 1420Locust Street, Suite 200
> Philadelphia, PA  19102

/s/ Daniel T. Brier