# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **THE PUBLIC INTEREST LEGAL FOUNDATION,** : | CIVIL ACTION NO. 1:18-CV-463 |
| : | |
| **Plaintiff** : | **(Chief Judge Conner)** |
| : | |
| v. : | |
| : | |
| **KATHY BOOCKVAR, in her official capacity as Acting Secretary of the Commonwealth of Pennsylvania,[1] and JONATHAN M. MARKS, in his official Capacity as the Commissioner of the Bureau of Commissions, Elections, and Legislation,** : | |
| : | |
| **Defendants** : | |

## MEMORANDUM

The Public Interest Legal Foundation (the "Foundation") commenced this action against Robert Torres ("Secretary Torres"), in his capacity as then-Acting Secretary of the Commonwealth of Pennsylvania, and Jonathan Marks ("Commissioner Marks"), in his capacity as Commissioner of the Bureau of Commissions, Elections, and Legislation (the "Bureau") of the Pennsylvania Department of State (the "Department"). The Foundation asserts a claim for violation of the National Voting Registration Act of 1993 ("the NVRA" or "the Act"),

---

[1] Robert Torres was Acting Secretary of the Commonwealth of Pennsylvania when the instant action was filed against him in his official capacity. On January 5, 2019, Kathy Boockvar succeeded Robert Torres as Acting Secretary. Pursuant to Federal Rule of Civil Procedure 25(d), Kathy Boockvar is substituted as the defendant in this action. See FED. R. CIV. P. 25(d).

52 U.S.C. § 20501 *et seq.* Defendants move to dismiss the Foundation's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 10).

I. **Factual Background & Procedural History**

The Foundation is a nonpartisan organization dedicated to "promot[ing] the integrity of elections nationwide." (Doc. 1 ¶ 5). In pursuit of this objective, the Foundation expends time and resources "to ensure that voter rolls . . . are free from ineligible registrants, noncitizens, individuals who are no longer residents[,] and individuals who are registered in more than one location." (Id.) In September 2017, the City of Philadelphia reported that a "glitch" at various offices of the Pennsylvania Department of Transportation had enabled noncitizens to register to vote when acquiring or renewing their driver's licenses. (Id. ¶ 31). The Pennsylvania General Assembly convened hearings on the "glitch" and other issues concerning noncitizen registration and voting. (See id. ¶¶ 42, 53). Secretary Torres, Commissioner Marks, and representatives of the Foundation all testified at these hearings. (Id. ¶¶ 43, 47, 54-55).

Contemporaneous with the hearings, the Foundation sought access to records "concerning noncitizen registrants, including records related to their removal from the voter registration lists and referrals to law enforcement." (Id. ¶ 68). The Foundation first requested these "voter list maintenance" records from Commissioner Marks by letter dated October 23, 2017. (Id. ¶¶ 67-69; Doc. 1-8 at 1-3). A Foundation representative attempted to inspect the requested records in person at the Bureau two days later. (Doc. 1 ¶¶ 71-75). A Bureau employee denied access to the records, and a representative from the Office of Chief Counsel to the

2

Department indicated that the Foundation's request was under review. (Id. ¶¶ 72-74). On October 30, 2017, agency open records officer Rebecca Fuhrman ("Fuhrman") asked for an additional 30 days to respond. (Id. ¶ 76; Doc. 1-9 at 6-7). When that timeframe elapsed without a response, the Foundation renewed the records request to Commissioner Marks and Fuhrman by letter, indicating that a Foundation representative would visit the Bureau on December 6, 2017 to inspect the records. (Doc. 1 ¶¶ 79-81; Doc. 1-9 at 1-2). The letter contained the following language: "This is your first notice that if you fail to make these records available for public inspection, you will be in violation of the NVRA and subject to an action to enforce the public records provisions of the NVRA." (Doc. 1-9 at 2).

On December 5, 2017, Kathleen Kotula ("Kotula"), deputy chief counsel for the Department, emailed the Foundation indicating that the records would not be available for inspection the following day. (Doc. 1 ¶ 82). The Department did not permit the Foundation's representative to inspect the records on December 6, 2017. (Id. ¶¶ 83-84, 86). Kotula emailed a letter to the Foundation from Commissioner Marks which formally denied the Foundation's records request. (Id. ¶¶ 87-88). In the letter, Commissioner Marks explained the Department's position that the Foundation was not entitled to the records under the NVRA. (Id. ¶¶ 88-89).

On December 20, 2017, the Foundation sent Commissioner Marks a letter entitled "NVRA violation notice." (Id. ¶ 96; see Doc. 1-10). Citing to the applicable NVRA provisions, the letter identified the Department's denial of the Foundation's records request as a violation of the statute and stated that "[t]he Department is hereby notified that it now faces federal litigation should it continue to deny access

3

to the requested records." (Doc. 1-10 at 1 (emphasis omitted)). The Foundation also noted that, because the purported violation occurred within 120 days of an election,[2] the Department had 20 days to correct it under the Act. (Id.; Doc. 1 ¶ 98). The Department never responded. (Doc. 1 ¶ 99).

The Foundation commenced this action alleging that defendants violated the Act's public disclosure provision by withholding access to the list maintenance records. Defendants move to dismiss the Foundation's claim for lack of subject matter jurisdiction and for failure to state a claim. The motion is fully briefed and ripe for disposition. Defendants also request oral argument on their motion under Local Rule of Court 7.9. (Doc. 13). Because we find oral argument unnecessary to disposition of the instant motion, we will deny this request.

## II. Legal Standard

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a claim for lack of subject matter jurisdiction. See FED. R. CIV. P. 12(b)(1). Such jurisdictional challenges take of one two forms: (1) parties may levy a "factual" attack, arguing that one or more of the pleading's factual allegations are untrue, removing the action from the court's jurisdictional ken; or (2) they may assert a "facial" challenge, which assumes the veracity of the complaint's allegations but nonetheless argues that a claim is not within the court's jurisdiction. Lincoln Benefit Life Co. v. AEI Life, LLC, 800 F.3d 99, 105 (3d Cir. 2015) (quoting CNA v.

---

[2] The governor of Pennsylvania selected March 13, 2018 for a special election to fill the state's vacant 18th congressional district. (Doc. 1 at 26 n.3).

4

United States, 535 F.3d 132, 139 (3d Cir. 2008)).  In either instance, it is the plaintiff's burden to establish jurisdiction.  See Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).

**B.    Rule 12(b)(6)**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted.  FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts a three-step inquiry.  See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. at 130 (alteration in original) (quoting

5

Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded.  Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556.  A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

### III.  Discussion

Defendants contend that the Foundation cannot assert a claim under the NVRA because the Foundation lacks constitutional standing, falls outside the zone of interests protected by the statute, and failed to provide Secretary Torres with adequate notice before filing suit.  Defendants also argue that the records the Foundation seeks are not subject to the Act's public disclosure provision.  We review defendants' Article III standing argument under Rule 12(b)(1) and defendants' remaining arguments under Rule 12(b)(6).[3]

---

[3] Defendants posit that application of the zone of interests standard deprives the court of subject matter jurisdiction.  (Doc. 12 at 15-17).  The zone-of-interests analysis focuses on whether a plaintiff has a cause of action under a particular statute and "is not a constitutional or prudential standing inquiry meant to ensure federal court jurisdiction."  Marathon Petroleum Corp. v. Sec'y of Fin. for Del., 876 F.3d 481, 492 n.13 (3d Cir. 2017) (citing Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 127-28 & n.4 (2014)).  Accordingly, we will address defendants' zone-of-interest arguments *infra* under the applicable Rule 12(b)(6) standard.  See Leyse v. Bank of Am. Nat'l. Ass'n, 804 F.3d 316, 320 (3d Cir. 2015).

6

### A. Article III Standing

Article III of the United States Constitution limits federal court jurisdiction to "cases" or "controversies." U.S. CONST. art. III, § 2. To establish Article III standing, a plaintiff must demonstrate "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likel[ihood] that the injury will be redressed by a favorable decision." Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157-58 (2014) (internal quotation marks omitted) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). To avoid impermissibly assessing the merits, a court must "assume for the purposes of [a] standing inquiry that a plaintiff has stated valid legal claims." Cottrell v. Alcon Labs., 874 F.3d 154, 162 (3d Cir. 2017) (citation omitted). The focus of the standing inquiry is "whether the plaintiff is the proper party to bring those claims." Id. (citations omitted). Defendants' Article III standing argument is confined to the injury-in-fact requirement. (See Doc. 12 at 16-17; Doc. 17 at 14-15).

A plaintiff sufficiently pleads an injury in fact by claiming "that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, Inc. v. Robins, 578 U.S. __, 136 S. Ct. 1540, 1548 (2016), as revised (May 24, 2016) (quoting Lujan, 504 U.S. at 560); Cottrell, 874 F.3d at 162-63. A legally protected interest may arise from, *inter alia*, a statute that creates legal rights. Cottrell, 874 F.3d at 164 (quoting Lujan, 504 U.S. at 576-78). An injury is particularized when it "affects the plaintiff in a personal and individual way." Spokeo, 136 S. Ct. at 1548. A concrete injury is one that "actually exist[s]" and is "real" rather than "abstract,"

id. at 1549 (citations omitted), and Congress may elevate an intangible harm to a concrete injury for purposes of standing, see In re Horizon Healthcare Servs. Inc. Data Breach Litig. ("In re Horizon"), 846 F.3d 625, 637 (3d Cir. 2017) (citing Spokeo, 136 S. Ct. at 1545). "The injury-in-fact requirement is 'very generous' to claimants." Cottrell, 874 F.3d at 162 (citation omitted). A plaintiff need only allege "some specific, identifiable trifle of injury." In re Horizon, 846 F.3d at 633 (citation omitted).

When Congress "elevates intangible harms into concrete injuries," a plaintiff need not allege "any *additional* harm beyond the one Congress has identified." Id. at 637 (quoting Spokeo, 136 S. Ct. at 1549). However, "mere technical violation of a procedural requirement of a statute" that results in no concrete harm is insufficient to establish Article III injury in fact. Id. at 637-38 (quoting Spokeo, 136 S. Ct. at 1549-50). The Supreme Court has held that "a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." Fed. Election Comm'n v. Akins, 524 U.S. 11, 21 (1998) (citing Public Citizen v. Department of Justice, 491 U.S. 440, 449 (1989)); see also Spokeo, 136 S. Ct. at 1549-50.

Congress identified several purposes of the NVRA within the statute itself. These include, *inter alia*, "to protect the integrity of the electoral process" and "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(3)-(4). To further these goals, the Act mandates public disclosure of "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters,"

8

with limited exceptions. Id. § 20507(i)(1). The Foundation alleges that defendants denied its multiple requests to inspect records "concerning noncitizen registrants, including records related to their removal from the voter registration lists and referrals to law enforcement," in violation of the Act's disclosure provision. (Doc. 1 ¶¶ 68, 72, 75, 82, 84, 86, 88, 100; see also Doc. 1-8). According to the complaint, this denial constitutes an informational injury to the Foundation sufficient to confer Article III standing. Moreover, the Foundation represents that it expended "considerable time and financial resources in an effort to obtain the requested records," including two in-person visits to the Bureau.[4] (Doc. 1 ¶¶ 71, 83, 111; Doc. 14 at 20-21). The Foundation has adequately pled an injury in fact.

### B. Zone of Interests

Defendants also assert that the Foundation is not a "person aggrieved" under the NVRA; hence, the Foundation's interests are not within the "zone of interests" sought to be protected by the statute. (Doc. 12 at 15-17). A statutorily-created cause of action is available only to plaintiffs whose interests "fall within the zone of interests protected by the law invoked." Lexmark, 572 U.S. at 129 (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)). In enacting the NVRA, Congress authorized private parties "aggrieved by a violation" thereof to bring a private cause of action

---

[4] Defendants correctly note that litigation expenses alone, including costs incurred to investigate an alleged violation, are insufficient to constitute an injury in fact. See Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 280 n.47 (3d Cir. 2014) (quoting Fair Hous. Council of Suburban Phila. v. Montgomery Newspapers, 141 F.3d 71, 79 (3d Cir. 1998)). The Foundation's expenses in seeking access to the at-issue records are not investigative or litigation-related costs; until the Department formally denied the request, no violation of the NVRA had occurred.

against a state's chief election official to enforce the statute. 52 U.S.C. § 20510(b)(1)-(2). Defendants contend that the Foundation does not qualify as a person aggrieved because its interests are "directly at odds" with the Act's stated goals. (Doc. 12 at 15).

The NVRA identifies four principal objectives which "can sometimes be in tension with one another." Am. Civil Rights Union v. Phila. City Comm'rs, 872 F.3d 175, 178 (3d Cir. 2017). The Act seeks to (1) "increase the number of eligible citizens who register to vote"; (2) "enhance[] the participation of eligible citizens as voters in elections for Federal office"; (3) "protect the integrity of the electoral process"; and (4) "ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(1)-(4). The Foundation represents that it seeks to promote election integrity nationwide by ensuring that voter rolls are "free from ineligible registrants, noncitizens, individuals who are no longer residents[,] and individuals who are registered in more than one location." (Doc. 1 ¶ 5). In pursuit of this mission, the Foundation sought records "concerning noncitizen registrants, including records related to their removal from the voter registration lists and referrals to law enforcement." (Id. ¶ 68).

The Foundation's mission is not discordant with all of the NVRA's stated goals. *Per contra*, ensuring the voter rolls are free from all manner of ineligible registrants "protect[s] the integrity of the electoral process" and furthers the Act's objective of ensuring the accuracy and currency of voter registration rolls. See 52 U.S.C. § 20501(b)(3)-(4). We conclude that the Foundation's interests do not render it outside the zone of interests protected by the NVRA.

### C. Notice

Notice is a precondition to filing suit under the NVRA. A person aggrieved by a violation of the Act "may provide written notice of the violation to the chief election official of the State involved." Id. § 20510(b)(1). Ordinarily, a party must wait 90 days after providing written notice before commencing a civil action to allow the chief election official time to correct the violation. Id. § 20510(b)(2). When a violation occurs within 120 days of a federal election, a party need only wait 20 days before filing suit. Id. The required notice period is eliminated when the violation occurs within 30 days of an election. Id. § 20510(b)(3). The purpose of the NVRA's notice requirement is to "provide states . . . an opportunity to attempt compliance before facing litigation." Scott v. Schedler, 771 F.3d 831, 836 (5th Cir. 2014) (quoting Ass'n of Cmty. Orgs. for Reform Now v. Miller, 129 F.3d 833, 838 (6th Cir. 1997)). District courts applying Section 20510 have found notice sufficient when it (1) sets forth the reasons that a defendant purportedly failed to comply with the NVRA, and (2) clearly communicates that a person is asserting a violation of the NVRA and intends to commence litigation if the violation is not timely addressed. See, e.g., Bellitto v. Snipes, 268 F. Supp. 3d 1328, 1334 (S.D. Fla. 2017); Project Vote, Inc. v. Kemp, 208 F. Supp. 3d 1320, 1348 (N.D. Ga. 2016); Judicial Watch, Inc. v. King, 993 F. Supp. 2d 919, 922 (S.D. Ind. 2012).

In Pennsylvania, the Department is charged with the administration of the state's elections. See 71 Pa. Stat. and Cons. Stat. Ann. § 273. The Secretary of the Commonwealth heads the Department and its bureaus, see id. § 271, and is Pennsylvania's chief election officer, see 25 Pa. Stat. and Cons. Stat. Ann. § 2621.

The Bureau, housed within the Department, carries out many of the election-related functions assigned to the Secretary of the Commonwealth. See id. §§ 2745-2750. The parties do not dispute that the Secretary of the Commonwealth is Pennsylvania's "chief election official" as contemplated by the NVRA. (See Doc. 12 at 17-18; Doc. 14 at 21-22; Doc. 17 at 15-16).

Defendants aver that the Foundation's claim must be dismissed because it failed to provide "direct notice of any alleged violation to [then] Acting Secretary Torres." (Doc. 17 at 15). We agree. The complaint is devoid of any allegations that the Foundation sent Secretary Torres, or that he received, written notice of the violation. (See Doc. 1). The Foundation directed all communications regarding the purported NVRA violation to Commissioner Marks. (Doc. 1-8 at 1; Doc. 1-9 at 1; Doc. 1-10 at 1). Secretary Torres is not mentioned in any of the Foundation's communications appended to the complaint. (See Doc. 1-8; Doc. 1-9; Doc. 1-10). Accordingly, the Foundation failed to comply with the Act's clear directive that a state's chief election official must receive notice of a violation before the aggrieved party may file suit.

The Foundation asseverates that the Secretary received constructive notice of the violation, noting that the deputy chief counsel for the Department facilitated communications between the Foundation and Commissioner Marks and that the chief counsel was carbon copied on pertinent emails. (See Doc. 14 at 21). The Foundation received a letter from the deputy chief counsel on December 20, 2017, wherein Commissioner Marks indicated that "[T]he Department does not agree that the NVRA entitles you to access the records." (Doc. 1 ¶¶ 87-88 (alteration in

12

original); Doc. 1-10). However, the Foundation's allegations only establish that the Office of Chief Counsel for the Department was representing or responding on behalf of Commissioner Marks. The Act requires written notice be provided to a state's "chief election official," 52 U.S.C. § 20510(b)(1), presumably because that individual exercises final decisionmaking authority in administering the state's elections. Absent from the complaint is any allegation that the Office of Chief Counsel informed Secretary Torres of the Foundation's notice such that Secretary Torres, in his capacity as the chief election official, had the opportunity to cure the purported violation. The Foundation's claim will be dismissed, without prejudice, for failure to provide proper notice under the NVRA.

## IV. Conclusion

The court will grant defendants' motion (Doc. 10) to dismiss the Foundation's complaint. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: February 26, 2019